IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| RALPH S. JANVEY, *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action No. 3:11-CV-0041-N |
| | § | |
| THE UNIVERSITY OF MIAMI, | § | |
| | § | |
| Defendant. | § | |

### ORDER

This Order addresses Defendant The University of Miami's (the "University") motion to dismiss [30]. For the reasons that follow, the Court denies the motion.

### I. THE RECEIVER'S ASSET RECOVERY ACTION

This case relates to the Securities and Exchange Commission's (the "SEC") ongoing securities fraud action against R. Allen Stanford, his associates, and various entities under Stanford's control (the "Stanford Defendants"). As part of that litigation, this Court assumed exclusive jurisdiction and took possession of the "Receivership Assets" and "Receivership Records" (collectively, the "Receivership Estate"). *See* Second Am. Order Appointing Receiver, July 19, 2010 [1130] (the "Receivership Order"), *in SEC v. Stanford Int'l Bank*, Civil Action No. 3:09-CV-0298-N (N.D. Tex. filed Feb. 17, 2009). The Court appointed Ralph S. Janvey to serve as Receiver of the Receivership Estate and vested him with "the full power of an equity receiver under common law as well as such powers as are enumerated" in the Receivership Order. *Id.* at 3. Among these enumerated powers, the Court "authorized

[the Receiver] to immediately take and have complete and exclusive control, possession, and custody of the Receivership Estate and to any assets traceable to assets owned by the Receivership Estate." *Id.* at 4. Additionally, the Court "specifically directed and authorized [the Receiver] to . . . [c]ollect, marshal, and take custody, control, and possession of all the funds, accounts, mail, and other assets of, or in the possession or under the control of, the Receivership Estate, or assets traceable to assets owned or controlled by the Receivership Estate, wherever situated," *id.*, and to file in this Court "such actions or proceedings to impose a constructive trust, obtain possession, and/or recover judgment with respect to persons or entities who received assets or records traceable to the Receivership Estate." *Id.* at 5.

Pursuant to those powers, the Receiver, along with the Official Stanford Investors Committee ("OSIC") (collectively, "Plaintiffs") filed this suit against the University. The University moves to dismiss, arguing that this Court lacks subject matter jurisdiction because neither the Receiver nor OSIC have standing to pursue this action, *see* FED. R. CIV. P. 12(b)(1); that this Court lacks personal jurisdiction over the University, *see id.* 12(b)(2); that venue is improper in the Northern District, *see id.* 12(b)(3); and that Plaintiffs fails to state claims upon which relief can be granted. *See id.* 12(b)(6).

## II. THE COURT HAS SUBJECT MATTER JURISDICTION OVER THIS ACTION

The University first argues that the Court lacks subject matter jurisdiction over this case because neither the Receiver nor OSIC has standing to pursue their fraudulent transfer and unjust enrichment claims. *See* FED. R. CIV. P. 12(b)(1). The University incorporates

by reference a number of standing arguments made by other defendants of the Plaintiffs' asset recovery actions. First, it argues that the Plaintiffs fail to articulate which of the two plaintiffs is bringing which claims. Second, it argues that Plaintiffs fail to identify which of the "Stanford Parties" the Plaintiffs purport to bring claims on behalf of and which of the Stanford Parties are creditors of the University. Third, the University argues that the Receiver may not assign claim to OSIC. Finally, it argues that OSIC lacks standing to pursue its claims outside of a bankruptcy court.

The Fifth Circuit has already held that the Receiver has standing to bring fraudulent transfer and unjust enrichment claims essentially identical to the claims it brings against the University. *Janvey v. Democratic Senatorial Campaign Comm.*, 712 F.3d 185, 192-93 (5th Cir. 2013). Because the Receiver has standing to brings its claims, the Court has subject matter jurisdiction over this action. *See id.* at 193 ("Because the presence of at least one petitioner with standing is sufficient to satisfy Article III's case-or-controversy requirement, the presence of that party, and its standing, makes it unnecessary to consider whether others do as well.").[1]

### III. THE COURT HAS PERSONAL JURISDICTION OVER THE UNIVERSITY

The University next argues that Plaintiffs have not established personal jurisdiction over it. "In order for a court to validly exercise personal jurisdiction over a non-resident defendant: (1) a statute must authorize service of process on the non-resident defendant; and

---

[1]In any event, the Court has also held that OSIC has standing to pursue its claims. *See* Order Denying Def.'s Mot. Dismiss, Sept. 24, 2012 [33], *in Janvey v. IMG Worldwide*, No. 11-CV-0117-N (N.D. Tex. filed Jan. 18, 2011).

(2) the service of process must comport with the Due Process Clause." *Rolls-Royce Corp. v. Heros, Inc.*, 576 F. Supp. 2d 765, 778-79 (N.D. Tex. 2008) (quoting *In re Celotex Corp.*, 124 F.3d 619, 627 (4th Cir. 1997)). Here, a federal statute provides nationwide service of process. *See* 28 U.S.C. § 1692. Thus, the Court must determine only whether the service comports with due process.

Due process requires that (1) the defendant purposefully availed itself of the benefits and protections of the forum by establishing "minimum contacts" with the forum; and (2) the exercise of personal jurisdiction does not offend "traditional notions of fair play and substantial justice." *Choice Healthcare, Inc. v. Kaiser Found. Health Plan of Colo.*, 615 F.3d 364, 367 (5th Cir. 2010). Typically, the minimum contacts required to comply with due process are contacts with the forum state. *See, e.g.*, *id.* However, where, as here, Congress has provided for nationwide service of process, the minimum contacts analysis focuses on "whether the defendant has had minimum contacts with the United States." *Busch v. Buchman, Buchman & O'Brien, Law Firm*, 11 F.3d 1255, 1258 (5th Cir. 1994).

Here, the Receiver pleads that the University is located in Coral Gables, Florida. Coral Gables, of course, is located in the United States. Since the relevant contacts are those with the United States, the Receiver has established the University's minimum contacts.

Because the Court finds that the Receiver has established minimum contacts, "the burden shifts to the defendant to show the assertion of jurisdiction would be unfair." *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 215 (5th Cir. 1999). To do so, the University must make a compelling case against the exercise of jurisdiction. *Id.* The Court must balance (1)

ORDER – PAGE 4

the burden on the defendant of litigating in the forum; (2) the forum state's interest in the lawsuit; (3) the plaintiff's interest in convenient and effective relief; (4) the judicial system's interest in efficient resolution of the controversies; and (5) the state's shared interest in furthering fundamental policies. *Id.*

The University makes no argument that jurisdiction would be unfair. Accordingly, the Court finds that the University fails to meet its burden to make a compelling case against the exercise of jurisdiction. The Court thus declines to dismiss the case on personal jurisdiction grounds.

### IV. VENUE IS PROPER IN THE NORTHERN DISTRICT OF TEXAS

The University argues that venue does not lie in the Northern District of Texas because Plaintiffs fail to allege facts regarding the University that occurred in Texas or anywhere outside of Florida. "Once a defendant has objected to venue, the burden shifts to the plaintiff to establish that venue is proper, but the Court must accept as true all allegations in the complaint and resolve all conflicts in favor of the plaintiff. *Emelkike v. L-3 Comm. Corp.*, No. 3:12-CV-2470, 2013 WL 1890289, at *1 (N.D. Tex. May 7, 2013) (citing *Ginter ex rel. Ballard v. Belcher, Predergast & Laporte*, 536 F.3d 439, 449 (5th Cir. 2008). Plaintiffs, however, assert that venue is proper under the receivership statute, 28 U.S.C. § 754. The Court has already held that venue is proper in this Court for similar receivership actions. *See Janvey v. Alguire*, 846 F. Supp. 2d 662, 669 n.5 (N.D. Tex. 2011); *see also SEC v. Bilzerian*, 378 F.3d 1100, 1107 (D.C. Cir. 2004); *Scholes v. Lehmann*, 56 F.3d 750, 753

(7th Cir. 1995). For the same reasons, the Court declines to dismiss the case on improper venue grounds.

## V. THE COURT DENIES THE UNIVERSITY'S RULE 12(B)(6) MOTION

### A. *Rule 12(b)(6) Standard*

When faced with a Rule 12(b)(6) motion to dismiss, a court must determine whether the plaintiff has asserted a legally sufficient claim for relief. *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995). A viable complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). To meet this "facial plausibility" standard, a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court generally accepts well-pleaded facts as true and construes the complaint in the light most favorable to the plaintiff. *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 816 (5th Cir. 2012). But a court does not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007). A plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (internal citations omitted).

### B. *The Court Does Not Engage in a Choice-of-Law Analysis*

The University asserts that Florida law applies to the case because it has the most significant relationship to the dispute. But the University fails to indicate how or why Florida law is different from Texas law. In fact, the Court has previously held that differences in application of courts of different states' identical UFTA language, including Florida's, is not an actual conflict. *See Janvey v. Alguire*, *et al.*, No. 3:09-CV-0274-N, *et al.*, 2013 WL 2451738, at *4 (N.D. Tex. Jan. 22, 2013). Thus, at least with respect to Texas's and Florida's UFTA provisions, there is no conflict. As for Plaintiffs' unjust enrichment claims, the University fails to provide any evidence or argument that Florida treats its claims of unjust enrichment differently than does Texas. "[T]he failure to provide adequate proof [of choice of law] . . . results in a presumption that the law of the foreign jurisdiction is identical to the law of Texas." *See Alguire*, 846 F. Supp. 2d at 671 (quoting *Pittsburgh Corning Corp. v. Walters*, 1 S.W.3d 759, 769 (Tex. App. – Corpus Christi 1999, pet. den.)) (alterations in original). Thus, the Court applies Texas law.

### C. *Plaintiffs State Their Fraudulent Transfer Claims*

*1. Plaintiffs Sufficiently Allege Their Fraudulent Transfer Claims Based on Actual Intent to Defraud.* – Section 24.005(a)(1) of the Texas Uniform Fraudulent Transfer Act ("TUFTA") provides that a transfer "is fraudulent as to a creditor, whether the creditor's claims arose before or within a reasonable time after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation . . . with actual intent to hinder, delay, or fraud any creditor of the debtor." Plaintiffs allege that fraudulent

transfers were made to the University "with actual intent to hinder, delay, or defraud Stanford's creditors." Compl. ¶ 36. Further, plaintiffs allege that Stanford operated a Ponzi scheme. This allegation is sufficient to plead actual intent to defraud. *See Warfield v. Byron*, 436 F.3d 551, 558 (5th Cir. 2006).

The University argues that this pleading is deficient because actual intent to defraud, in the Ponzi scheme scenario, is presumed only if the payments were made in furtherance of the scheme. But the Fifth Circuit does not require this. *See Warfield*, 436 F.3d at 558. Further, the Fifth Circuit has specifically noted the Receiver has stated fraudulent transfer claims based on similar language in a similar complaint. *See Democratic Senatorial Campaign Comm.*, 721 F.3d at 192 ("The Receiver's original complaint against the Committees alleges, gives notice of, and states a claim . . . ."). And even if Plaintiffs needed to allege that the payments made to the University furthered the Ponzi scheme to adequately plead actual intent to defraud, Plaintiffs plead that the University "either performed no services for the CD proceeds it received, performed services that did not constitute reasonably equivalent value in exchange for the CD Proceeds it received, or performed only services that were in furtherance of the Ponzi scheme, which cannot be reasonably equivalent value as a matter of law." Compl. ¶ 5. Accordingly, the Court denies the University's motion to dismiss Plaintiffs' fraudulent transfer claim based on actual intent to defraud.

***2. Plaintiffs Sufficiently Allege Facts to State a Constructively Fraudulent Transfer Claim.*** – TUFTA also provides a cause of action for constructively fraudulent transfers. To prevail on a constructive fraudulent transfer, a plaintiff must show that the debtor (1) was

insolvent at the time the transfer was made, and (2) it received less than reasonably equivalent value in exchange for the transfer. TEX. BUS. & COMM. CODE § 24.005(a)(2). Again, Plaintiffs plead that Stanford ran a Ponzi scheme. Ponzi schemes are insolvent at their inception as a matter of law. *See Warfield*, 436 F.3d at 550. And Plaintiffs plead that the University either performed no services for the funds, or if it did perform services, those services were not worth what the University received.[2] Accordingly, the Court denies the University's motion to dismiss Plaintiffs' constructive fraud claim.

***3. Rule 9(b) Does Not Apply to Plaintiffs' Fraudulent Transfer Claims.*** – The University also argues that Plaintiffs fail to plead their fraudulent transfer claims with the particularity required by Rule 9(b). The Court has already held that Rule 9(b) does not apply to Plaintiffs' fraudulent transfer cases in essentially identical circumstances. Specifically, the Court adopted the reasoning of the Court in *Wing v. Horn*, No. 2:09-CV-00342, 2009 WL 2843342 (D. Utah Aug. 28, 2009):

> There is no allegation that the [d]efendant committed any act of fraud; indeed, the defendant's conduct is simply not an element of the Receiver's claim. Furthermore, the Court finds that the distinction between intentional fraudulent transfer and constructive fraudulent transfer claims drawn by other courts addressing the applicability of Rule 9 to fraudulent transfer cases is not helpful in Ponzi scheme cases in which "actual intent" can be inferred by virtue of the transferor's insolvency as a matter of law. Finally, the Court finds that this inference of fraudulent intent applies to all transfers from a Ponzi scheme,

---

[2]In any event, the Court has repeatedly held that Plaintiffs' complaint states an actual-intent-to-defraud fraudulent transfer claim. As the elements of such a claim are easier to prove than the constructive fraudulent transfer elements, whether Plaintiffs state a constructive fraud claim is likely irrelevant. In fact, based on the same complaint, this Court has specifically characterized the complaint as bringing actual intent to defraud, not constructive fraud, transfer actions. *Alguire*, 846 F. Supp. 2d at 671.

regardless of the defendant's characterization of them as ordinary business transactions.

*Alguire*, 846 F. Supp. 2d at 676 (quoting *Wing*, 2009 WL 2843342, at *3). Accordingly, Rule 9(b) does not apply to Plaintiffs' fraudulent transfer claims. The Court thus denies the University's motion to dismiss Plaintiffs' fraudulent transfer claims on Rule 9(b) grounds.

### *D. Plaintiffs State That They Are Entitled to Unjust Enrichment Disgorgement*

The University next argues that Plaintiffs fail to allege sufficiently their unjust enrichment claims. The Court has previously noted a lack of clarity in Texas law regarding whether unjust enrichment is its own cause of action. Nevertheless, the Court has held that at the very least the Plaintiffs plead a claim for money had and received, if not an independent unjust enrichment claim. *Alguire*, 846 F. Supp. 2d at 674. For the same reasons the Court denied the Stanford employee defendants' motion to dismiss the Receiver's alternative claim for unjust enrichment in *Alguire*, the Court denies the University's motion here. Plaintiffs allege that Stanford's CDs generated substantially all of the income and that the University received payments from that CD income. These CDs were fraudulent and therefore, according to Plaintiffs, the University was essentially paid with stolen money. Thus, Plaintiffs plead that the University obtained a benefit from the Stanford Defendants' scheme that equity dictates they cannot retain justly.

The University also argues that the unjust enrichment claim is barred by a two-year statute of limitations. The Court disagrees. First, limitations is an affirmative defense and thus, to warrant dismissal based on limitations, it must appear from the face of Plaintiffs' pleading that the claims are barred. *See Garcia v. Universal Mortg. Corp.*, No. 3:12-CV-

ORDER – PAGE 10

2460, 2013 WL 1858195, at *2 (N.D. Tex. May 3, 2013) (citing *Jones v. Alcoa*, 339 F.3d 359, 366 (5th Cir. 2003)).  However, it is an open issue whether the discovery rule would apply to the equitable unjust enrichment claim.  *See Albermarle Corp. v. MEMC Electronic Materials, Inc.*, 685 F. Supp. 2d 652, 657 (S.D. Tex. 2010) (applying discovery rule to unjust enrichment claim); *Verizon Employee Benefits Comm. v. Frawley*, No. 3:05-CV-2105-P, 2007 WL 2051113, at *4 (denying motion to dismiss because discovery rule might apply).  If the discovery rule did apply to this claim, there would be fact issues regarding when the Plaintiffs discovered their claims.  Second, as noted earlier in this Order, and by this Court in previous Orders, Plaintiffs' unjust enrichment claim is more like a claim for money had and received.  Characterized as such, a four-year limitations period would apply.  *See* TEX. CIV. PRAC. & REM. CODE § 16.004; *Frawley*, 2007 WL 2051113, at *5 (applying four-year limitation period to money had and received claim because such claim was suit on unacknowledged debt).  Thus, it is not apparent from the pleadings that limitations bars Plaintiffs' claims.  Accordingly, the Court denies Defendants' motion to dismiss Plaintiffs' unjust enrichment claims.

## CONCLUSION

For the reasons stated above, the Court denies the University's motion.

Signed July 11, 2013.

David C. Godbey
United States District Judge